**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEBORAH JANE LUTZ,

                          Plaintiff,

          - v -                                    Civ. No. 7:15-CV-828
                                                                      (BKS/DJS)

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

                          Defendant.

**APPEARANCES:**                                     **OF COUNSEL:**

STANLEY LAW OFFICES                    JAYA A. SHURTLIFF, ESQ.
*Attorney for Plaintiff*
215 Burnet Avenue
Syracuse, New York 13203

SOCIAL SECURITY ADMINISTRATION      LAUREN E. MYERS, ESQ.
*Attorney for Defendant*
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

       In this action, Plaintiff Deborah Jane Lutz moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB"), Period of Disability ("POD"), and Supplemental Security Income ("SSI").[1] Based upon the following discussion, it is recommended that the Commissioner's decision

---

[1] This case has proceeded in accordance with General Order 18, which set forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 12, Pl.'s Br., & 13, Def.'s Br.

denying Social Security benefits be **affirmed**.

## I. BACKGROUND

The Court adopts the brief facts set forth in Plaintiff's Brief under the heading "STATEMENT OF FACTS," with the exception of any legal arguments contained therein. Dkt. No. 12, Pl.'s Br., at pp.2-7; *but see* Dkt. No. 13, Def.'s Br., at p. 1 (adopting statement of facts set forth by the Administrative Law Judge ("ALJ") in his written opinion).

Lutz, born on August 5, 1960, filed applications for DIB, POD, and SSI on April 23, 2012, claiming an inability to work as of April 23, 2012, due to a variety of ailments, including cervical stenosis and spondylosis, clavicle injury, pinched nerve in the right arm, depression, high blood pressure, and headaches. Dkt. No. 10, Admin. Transcript [hereinafter "Tr."] at pp. 22, 161-67, 168-74, 211, & 248. Plaintiff began experiencing pain in her neck in 2010 when she got hit with a "rocket cart"[2] while working at Wal-Mart. *Id.* at p. 34. Lutz graduated high school and has not completed any type of specialized job training, trade, or vocational school. *Id*. at p. 216. Her past work includes various positions at Wal-Mart, including department manager, bakery associate, and door greeter, to name a few. *Id*. at pp. 37 & 242-47. She has worked full-time at Wal-Mart since 1992, eventually cutting hours in 2012, per doctor's orders, to twelve hours a week due to her injuries. *Id*. at pp. 37-39 & 312.

Lutz's disability applications were denied on initial review. *Id*. at pp. 62 & 63. On July 15, 2013, a Hearing was held before Administrative Law Judge ("ALJ") John P. Ramos wherein testimony was procured from Lutz, who was accompanied by a non-attorney representative. *Id*. at pp. 29-60. On March 18, 2014, ALJ Ramos issued an unfavorable decision finding that Lutz was

---

[2] Lutz explained that a "rocket cart" is a cart used for putting merchandise on in order to bring freight out. Tr. at p. 34.

not disabled. *Id*. at pp. 9-28. On May 22, 2015, the Appeals Council declined to review the ALJ's decision, concluding that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1–7. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge ("ALJ") must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where

the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner

considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Ramos's Findings

As noted above, Lutz was the only witness to testify at the Hearing. Tr. at pp. 29-60. In addition to such testimony, the ALJ had Lutz's medical records consisting of treatment reports and opinions from various treating and/or consulting physicians. *Id.* at pp. 313-534.

ALJ Ramos noted initially that, for DIB purposes, Lutz met the insured status requirements of the Social Security Act through December 31, 2017.[4] *Id.* at pp. 13 & 15. Using the five-step disability evaluation, ALJ Ramos found that: (1) Lutz had not engaged in any substantial gainful activity since April 23, 2012, the alleged onset disability date; (2) she has a severe medically determinable impairment, namely degenerative disc disease of the cervical spine, but her weight, hypertension, migraine, pinched nerve in right arm, sleep apnea, depression, and anxiety are not considered to be severe; (3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) she retains the RFC to perform the full range of light work with certain limitations, such as she would need to avoid more than occasional overhead reaching, and, as such, she could not return to any of her prior work; but, (5) considering her age, education, work experience, and the RFC, and using the Medical-Vocational Guidelines as a framework, Lutz could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 15-22.

---

[4] In order to qualify for DIB, Lutz's disability must have commenced at a time when she met the insured status requirements as provided by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130 & 404.315(a). To be eligible for SSI, she must meet the income and resource requirements of the Social Security Act. 42 U.S.C. §§ 1382a & 1382b. Furthermore, SSI benefits are not payable for any month before the month in which the application for such benefits is filed. 20 C.F.R. § 416.335.

### D. Plaintiff's Contentions

Plaintiff raises several arguments in support of her contention that the ALJ's decision was not supported by substantial evidence and that he applied incorrect legal principles in determining her disability claim. *See generally* Pl.'s Br. Initially, Plaintiff asserts that the ALJ failed to develop the record with regard to her depression and anxiety and that he should have obtained a consultive psychological examination. According to Plaintiff, the ALJ's failure to develop the record in this regard rendered his finding at Steps Two and Three, regarding the severity of Plaintiff's mental impairments, to be erroneous. Next Plaintiff asserts that, in rendering her RFC, the ALJ incorrectly weighed the medical opinions and improperly assessed her credibility. Lastly, Plaintiff asserts that the ALJ erred when he failed to consult a vocational expert ("VE") in meeting his burden at Step Five.

### 1. Duty to Develop the Record

According to Plaintiff, the record reveals that she suffers from depression and, as she testified, she had been referred to counseling but was unable to afford it. Pl.'s Br. at p. 12 (citing Tr. at pp. 52, 314-54, & 455. Because there are indications in the record that she suffers from depression, Plaintiff contends that the ALJ erred when he failed to obtain a consultive examination regarding this mental impairment and as such there is an "obvious gap in the record." *Id*.

It is Plaintiff's burden to establish the existence of her mental impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). In order to be deemed severe, a claimant's mental impairment must have a significant effect on her ability to perform work related activities, such as understanding, carrying out, and remembering simple instructions, using judgment, and responding appropriately to supervision, coworkers and usual work situations. *See* 20 C.F.R. §§ 404.1520a &

404.1521.

In light of the remedial intent of the Social Security statute, and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty to develop the medical record. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d) & 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . ."). This includes the duty to "investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103, 111 (2000). This duty requires the ALJ to make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources[,]" *Perez v. Chater*, 77 F.3d at 47 (quoting 20 C.F.R. § 404.1512(d)), and to recontact a claimant's treating physician "if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled[,]" *Rodriguez ex rel Silverio v. Barnhart*, 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003). Further, the ALJ is statutorily authorized to issue subpoenas for both medical records and testimony of witnesses. 42 U.S.C. § 405(d).

Despite this duty to develop the record, the Regulations do not <u>require</u> consultive examinations. 20 C.F.R. §§ 404.1512(e) & 416.912(e). Instead, the SSA may order a consultive examination (at the Agency's expense) in situations such as where there is a need to resolve inconsistencies in the record or where the record is insufficient to make a determination. *Id*. at §§ 404.1519a(b) & 416.919a(b). Here, with regard to Plaintiff's mental impairments, there were no inconsistencies in the record, nor insufficient evidence. In fact, despite Plaintiff's contention that she could not afford counseling services, Plaintiff's medical records make clear that her depression improved with medication; furthermore, clinical findings during her examinations support the

contention that Plaintiff's mental health was relatively normal. *See*, *e.g.*, Tr. at pp. 337-38 (noting medication has helped depressive symptoms and displaying a normal affect upon examination with no suicidal nor homicidal ideation). Indeed, Lutz's submissions to the SSA also support that notion that her mental health is normal. In a functional report completed by Plaintiff on May 30, 2012, Plaintiff indicated that she is able to maintain her own hygiene without help or reminders from others (Tr. at pp. 228-29), completes indoor and outdoor chores on her own without any help (Tr. at p. 230), takes care of her dog, whom she asserts is "therapathic" for her (Tr. at p. 228), she can maintain her finances (Tr. at p. 231), remains social with family (Tr. at pp. 231-32), can follow through with tasks, has no problem paying attention, can follow oral and written instructions, has no trouble remembering things, can get along with people in positions of authority (Tr. at p. 234), and has never lost a job due to inability to get along with others (Tr. at p. 235). She further indicates that because of her medication, she does not experience stress. *Id*. at p. 235. These statements and activities are consistent with the ALJ's findings regarding the degree of functional limitations caused by Plaintiff's mental impairments, namely: no limitations in the category of activities of daily living; mild limitations in the categories of social functioning and concentration, persistence, and pace; and no episodes of decompensation.[5]

Plaintiff does not argue that the ALJ's findings in this regard, based upon her own statements about what she is still able to do, are erroneous. She merely insists that she should have been

---

[5] With regard to the evaluation of the severity of a claimant's mental impairments, the Regulations direct the ALJ to follow a special technique, involving "rat[ing] the degree of functional limitation resulting from the impairment(s)" in the context of "four broad functional areas": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(b) & (c) & 416.920a(b) & (c); *see also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4) & 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe . . . .'" *Kohler v. Astrue*, 546 F.3d at 266 (citation omitted).

independently evaluated. Because the medical evidence does not support work-related functional limitations resulting from a mental impairment, further mental health development was not warranted and the ALJ did not err by failing to order such consultive exam. *See Miller v. Colvin*, 2016 WL 4402035, at *6 (N.D.N.Y. Aug. 18, 2016) (citing cases).

### 2. Plaintiff's RFC

Next Plaintiff contends that in rendering the RFC assessment, the ALJ improperly weighed the opinion evidence and improperly assessed her credibility. Pl.'s Br. at pp. 9-15.

As noted above, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1545(a) & 416.945; 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. §§ 404.1567 & 416.967. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at §§ 404.1545(a) & 416.945(a).

In this action, when assessing Plaintiff's RFC, the ALJ reviewed the medical record and opinion evidence and determined that Lutz had the

> residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), which involves lifting and/or carrying 20 pounds occasionally and ten pounds frequently, standing and/or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. She should

avoid more than occasional overhead reaching.[6]

Tr. at p. 18.

Plaintiff contends that in rendering this RFC determination, the ALJ improperly assessed the medical opinion evidence. Specifically, Plaintiff disputes the weight attributed to Lisa Trickey, PA-C, whom Plaintiff regularly treated with, and Elke Lorenson, M.D., the consultive examiner who examined Plaintiff after the ALJ Hearing. *See* Pl.'s Br. at pp. 10-12; *see also* Tr. at pp. 312 & 482-92. Plaintiff further contends that the ALJ improperly assessed her credibility. Both of these contentions are addressed below.

### a. Opinion Evidence

Plaintiff has been treating with PA-C Trickey for several years. In a brief medical statement, dated April 23, 2012, PA-C Trickey indicated that Plaintiff has been under her care for migraines, neck pain, back pain, and pain in her extremity. Tr. at p. 312. Without citing to any medical records or clinical findings, PA-C Trickey stated that Plaintiff was limited to "work three days a week, no more than four hours a day. She is to lift no more than ten pounds. She is not to have repetitive bending, twisting, or squatting." *Id*. PA-C Trickey also completed a Medical Questionnaire, dated June 18, 2013, wherein she indicated that Plaintiff suffered from migraine, neck pain, back pain, insomnia, and depression, and that she could not lift more than ten pounds and could not perform any overhead reaching. *Id*. at p. 455. In assessing these opinions, the ALJ stated that because these

---

[6] Specifically, the Regulations define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. §§ 404.1567(b) & 416.967(b).

*-11-*

medical opinions are not substantiated by the objective evidence in the record, including PA-C Trickey's own treatment notes, and because PA-C Trickey is not considered an acceptable medical source, her opinions and assessments were given limited evidentiary weight. *Id*. at pp. 19-20.

I find that no error has been committed with regard to PA-C Trickey's medical assessment. First and foremost, under the Regulations, a physician's assistant is not listed as an "acceptable medical source" who can give a medical opinion establishing an impairment, however, the physician assistant's opinion may be used "[i]n addition to evidence from the acceptable medical sources list . . . to show the severity of [a claimant's] impairment(s)[.]" 20 C.F.R. §§ 404.1513(a) & (d)(1) & 416.913(a) & (d)(1). In this regard, the ALJ was not obligated to assign controlling weight to any opinion rendered by Trickey. *See id.*; *Colondres v. Barnhart*, 2005 WL 106893, at *6 n. 97 (S.D.N.Y. Jan. 18, 2005) (noting that a physician's assistant "is not an acceptable medical source and such opinion is never entitled to [controlling] weight" as is afforded to a treating physician). Furthermore, in assessing what weight to assign to Trickey's opinions, the ALJ properly concluded that her opinions were not properly supported by her own treatment notes and should therefore only receive limited weight.

While PA-C Trickey stated that Plaintiff's work limitations were, in part, due to pain from migraine headaches, her treatment notes reflect that this condition was controlled with medication. Tr. at pp. 337-38, 340-41, 343-44, 349-50, & 352-53. Similarly, despite Plaintiff's complaints of pain in upper extremities, comparison of an MRI of her cervical spine of April 18, 2012, with that taken on November 2, 2010, showed no significant change, suggesting there was no worsening of her condition. *Id*. at p. 311. And, her physical examinations consistently revealed no tenderness in her shoulders bilaterally, normal and symmetric strength in her upper extremities, as well as normal

reflexes in her upper extremities. *Id*. at pp. 344, 347, 350, & 353. In medical records provided after the ALJ Hearing, Plaintiff had full motor strength in her left upper extremity and nearly full in the right. *Id*. at pp. 524, 527, 530, & 533. As noted by Defendant, Plaintiff has received conservative treatment for her pain, in the form of a TENS unit, medication, and physical therapy, and Plaintiff has reported improvement in her cervical pain with such treatment. *Id*. at pp. 339, 350, 401, & 404. Because PA-C Trickey's opinions are not supported by the medical record, the ALJ properly used his discretion in affording it limited evidentiary weight.

Next, Plaintiff contends that the ALJ improperly discounted portions of the consultive examiner's opinion, erroneously picking and choosing which evidence to credit and substituting his own opinion for that of a medical expert. Pl.'s Br. at pp.10-12. The Court does not agree with this assessment.

On August 8, 2013, subsequent to the ALJ Hearing, Plaintiff was examined by Elke Lorensen, M.D., for purposes of rendering an assessment of her condition and ability to do work-related activities. Tr. at pp. 482-92. Upon examination, Plaintiff exhibited normal gait and did not appear to be in distress. *Id.* at p. 482. She could walk on heels and toes without difficulty. *Id*. Her stance was normal. *Id*. She needed no help changing for the exam or getting on and off the exam table and she used no assistive devices. *Id*. And she was able to rise from her chair without difficulty. *Id*. Plaintiff report to Dr. Lorensen that she cooked and cleaned daily, did a little shopping, showered and dressed herself daily, though she needed some help doing laundry. *Id*. She also stated that she watches television and socializes with friends. *Id*.

Upon physical examination, Dr. Lorensen observed the following:

Cervical spine rotation is 40 degrees bilaterally, lateral flexion 30 degrees bilaterally, extension 20 degrees, full flexion. No scoliosis, kyphosis, or abnormality in thoracic

spine. Lumbar spine flexion 50 degrees. Extension, lateral flexion, and rotation are full bilaterally. SLR negative bilaterally. Forward elevation/abduction of the shoulders 130 degrees bilaterally. Elbor flexion is 130 degrees bilaterally. Full ROM of forearms and wrists bilaterally. Hip flexion 50 degrees bilaterally. Knee flexion 75 degrees bilaterally. Full ROM of ankles bilaterally. No evident subluxations, contractures, ankylosis, or thickening. Joints stable nontender. No redness, heat swelling, or effusion.

*Id*. at p. 484.

Dr. Lorensen assessed that Lutz had moderate restrictions turning her head sideways and looking up, and moderate restrictions with bending, lifting, and reaching. *Id*. at p. 486. In his Medical Source Statement, Dr Lorensen determined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of four hours each in an eight-hour work day, and sit for a total of eight hours in an eight-hour work day. *Id* at pp. 486-87. He further opined that Lutz could occasionally reach overhead, but could never climb stairs, ramps, ladders, or scaffolds, and could never balance, stoop, kneel, crouch, or crawl. *Id*. at pp. 488 & 489. Dr. Lorensen also assessed several environmental restrictions, for example he opined that Lutz could never be exposed to unprotected heights, moving mechanical parts, nor operate a vehicle. *Id*. at p. 490. He further opined that Lutz could occasionally tolerate exposure to humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and heat, and vibrations. *Id*.

In reviewing the medical evidence, the ALJ noted that based upon Dr. Lorensen's program expertise, some weight was afforded to his opinions regarding Lutz's ability to lift, carry, sit, and reach overhead. The ALJ noted that Dr. Lorensen's limitations in this regard coupled with the examination report supported the finding that Lutz could perform light work activity with some limitations for overhead reaching. *Id*. However, the ALJ did not adopt other limitations identified by Dr. Lorensen because such were not consistent with the evidence in the record. *Id.* at p. 20.

The ALJ is entitled to weigh the evidence before him and determine and accept findings that

are consistent with the evidence in the record. It was therefore not an error for the ALJ to accept only those portions of the consultive examiner's medical source statement that were consistent with the evidence in the record. Notably the Regulations allow the ALJ to give less weight to medical opinions if it is not supported by medically acceptable clinic clinical laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record, such as the case here. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). Accordingly I find that the ALJ correctly assessed the medical opinions contained in the record and apply the correct legal principles and rendering his RFC assessment.

### b. Plaintiff's Credibility

Next I address Plaintiff's claims regarding the ALJ's credibility assessment of her statements pertaining to her symptoms and the limiting effects thereof. Under, the Regulations, subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a) & 416.929(a). Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination. 20 C.F.R. §§ 404.1529(a), (d) & 416.929(a), (d). A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id*. at §§ 404.1529(c)(4) & 416.929(c)(4). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* at §§ 404.1529(c) & 416.929(c). "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera*

*v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

(i) [The claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

Here the ALJ correctly determined that while Plaintiff had a medically determinable condition that would cause symptoms such as pain, her statements regarding her inability to engage in any work activity is belied by her own statements in the record as well as the fact that her cervical symptoms have improved with conservative treatment. Most notably, Plaintiff's broad range of daily activities, which includes cleaning, shopping, cooking, caring for her personal needs, exercise regimen through

walking, socializing, caring for three grandsons, and assisting elderly women as well as engaging in community service, coupled with her ongoing work activity lend credence to the ALJ's determination that her subjective complaints are only partially credible. Tr. at pp. 15, 21, 37, 39, 46-47, 346, 483, & 497. In this regard the ALJ took into account the proper factors in determining the weight to afford plaintiffs subjective complaints of symptoms. I therefore find no error committed in the ALJs assessment.

### 3. VE Testimony

At Step Five of the sequential disability evaluation, the Commissioner bears the burden of proving that despite the claimant's severe impairments he or she is capable of performing work that is available in the national economy. 20 C.F.R. §§ 404.1520(f) & 416.920(f). If a claimant is unable to perform a full range of a particular exertional category of work, or an issue of whether the claimant possesses transferable work skills remains, the ALJ may utilize the services of a vocational expert ("VE").[7] 20 C.F.R. §§ 404.1566(e). Ordinarily, if a claimant suffers solely from exertional impairments, the Commissioner meets her burden at the fifth step by resorting to the Medical-Vocational Guidelines (the "Grids"). *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); 20 C.F.R. § 404.1569. The Grids place claimants with severe exertional impairments who can no longer perform past relevant work into categories according to their RFC, age, education, and work experience (*i.e.*, skilled or unskilled as well as transferability of skills). 20 C.F.R. Pt. 404, Subpt. P, App. 2; *see also Clark v. Barnhart*, 2003 WL 221397777, at *4-5 (E.D.N.Y. Sept. 16, 2003). Based upon these factors, the Grids are dispositive

---

[7] "A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations." *Charlebois v. Comm'r, Soc. Sec. Admin.*, 2003 WL 22161591, at *10 (N.D.N.Y. Sept. 12, 2003) (citing, *inter alia*, *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983))

on whether the claimant is disabled or not disabled and proper application thereto will obviate the need for any vocational testing. *Rosa v. Callahan*, 163 F.3d at 82 ("For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled.").

Exclusive use of the Grids, however, is "inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations," i.e., a combination of exertional and non-exertional limitations. 20 C.F.R. § 404.1569a(d). "[W]hen significant nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity." *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 127 (D. Conn. 2002) (citing *Bapp v. Bowen,* 802 F.2d at 605). "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d at 603. Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations" such significant diminishment renders sole reliance on the grids is inappropriate. *Id*. at 605-06. "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id*. at 606 (quoted in *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).[8]

---

[8] The Second Circuit arrived at this standard in reliance on sister circuit case law as well as the report accompanying the promulgation of the grids. *See Bapp v. Bowen*, 802 F.2d at 605-06. The promulgation report made clear that nonexertional limitations may have the effect of excluding certain jobs within a particular category, however, in some cases, such exclusions are negligible in that a wide range of jobs exist within the functional level especially in light of the fact that an individual "need not be able to perform each and every job in a given range of work." *Id*. at 606
(continued...)

Exertional limitations are strength limitations, which include the ability to sit, stand, walk, carry, push, and pull. 20 C.F.R. §§ 404.1569a(a)–(b) & 416.969a(a)–(b); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 n.3 (S.D.N.Y. 1996). Non-exertional limitations imposed by impairments affect one's ability to meet requirements of jobs, other than strength demands including, "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(1)(vi) & 416.969a(c)(1)(vi); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y.1997).

In the instant case, Plaintiff argues that the ALJ erred by relying upon the Grids as a framework in finding that Plaintiff is not disabled rather than consulting a vocational expert. However, having already determined that the ALJ properly assessed Plaintiff's RFC in the light work category with only the additional restriction of occasional overhead reaching, it was entirely appropriate for the ALJ to rely upon the Grids in finding that, based upon her age, education, work experience, and RFC Plaintiff was not disabled. In light of the record before the ALJ, I find that no VE was necessary solely based on Plaintiff's limitation to occasionally reach overhead as it is clear that such limitation does not significantly limit the types of activities she can engage in, as evidenced by her activities, including work activities. Thus, I find that the of non-disability at Step Five was appropriate.

---

[8](...continued)
(quoting 43 FED. REG. 55,349-55,361).

## III. CONCLUSION

In light of the above, I find that as to the arguments raised by Plaintiff on appeal, the ALJ did not commit any legal errors and his findings are supported by substantial evidence in the record. As such, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: September 8, 2016
Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge